LOTTINGER, Judge.
This is a workmen’s compensation suit ..wherein the plaintiff, Edward Batiste, seeks to recover compensation at the rate of $30 per week for the period of his alleged disability, not to exceed 400 weeks, together with medical expenses within the statutory limits.
He alleges in his petition that on November 19, 1951, the date of the accident in question, he was employed by Lake Charles Stevedores, Inc. as á longshoreman, and the sole defendant herein is the Travelers Indemnity Company, compensation insurer of his employer. It is further set forth that he was injured while'in the process of unloading rice when, while in a stooping position, six sacks of rice, weighing approximately 600 lbs., fell from the top of the stack and struck him across the back.
The defendant admitted that the petitioner was injured in the course of his employment and that his work together 'with the business of his employer are both hazardous within the meaning of the compensation statute. It is further admitted that the plaintiff’s earnings were such that if he is entitled to compensation, his'weekly benefits are to be at the rate of $30 per week.
It is shown that the defendant paid plaintiff compensation 'from November 19, 1951, until December 18, 1951, at the rate of $23.40 per week. As the amount of weekly payments is no longer in dispute, the sole questions presented are the disability, if any, of the plaintiff and the period of timé for which he would be entitled to compensation benefits. The case was tried on March 24, 1953, and judgment was rendered in favor of plaintiff awarding him compensation at the rate of $30 per week from November 19, 1951, until February 27, 1952. The matter is now before us on an appeal by the plaintiff who seeks judgment for compensation not to exceed 400 weeks as originally prayéd for.
*740 The alleged injury is described by the plaintiff in his petition as “severe injuries to the muscle, tissue and vertebrae in the region of his back, fibrosis of the epididymis and stocking anesthesia to the calves of both: legs, bilaterally”. We might remark at the outset that this case is another of those cases which have come before us involving a back injury together with the abundant medical testimony that is usually to be found in such matters. The record shows that the plaintiff was seen, treated or examined by no less than ten physicians including three neuro-surgeons, three orthopedic surgeons, three general practitioners and one urologist. We will attempt to discuss these gentlemen’s testimony in the chronological order in which they examined the petitioner.
The first physician to attend the plaintiff was Dr. ■■R. P. Howell, -a general practitioner who engages to some extent in the practice of industrial medicine. This doctor first saw the plaintiff the day after the accident and thereafter on 48 different .occasions. This gentleman, called to testify cm behalf of the defendant, stated thqt on December 1?, 1951, he sent him to Dr. C. V. Hatchette, an orthopedic surgeon for confirmation of his findings and conclusions that Batiste had not sustained an orthopedic injury.
Dr. Hatchette, who also testified on behalf of the defendant, stated that his orthopedic examination which was made on December 17, 1951, was entirely negative. He did, however, note the presence of a nontraumatic prostate disorder. It seems that Dr. Howell diagnosed that Batiste was suffering from a genito-urinary condition of prostatitis and he sent the plaintiff to Dr. C. O. Frederick, a urologist for diagnosis and treatment of this condition.
Dr. Frederick, whose testimony was offered on behalf of defendant, rendered a written report, wherein he noted a slight enlargement of the prostate gland and recommended massage for a period of approximately six weeks. This treatment was followed by Dr. Howell and on February 25, 1952, he again sent Batiste to Dr. Frederick for examination, the result of which is as follows:
“The prostate gland was considered normal in size and the secretion was negative. The upper urinary tract was not studied because there were no symptoms directed to the kidneys or ureter. Conclusion: No genito-urinary tract diseases at this time.”
Neither of the three doctors mentioned above considered the plaintiff’s prostate condition to be of traumatic origin. Dr. Howell discharged the plaintiff on February 25, 1952, and he testified that “It is my opinion that this man is just as well today as he was the day he discharged him in 1952, and it is my opinion that both at that time and at this time, he has no disability.”
The plaintiff was examined also at the instance of the defendant on January 23, 1952, by Dr. Richard Corales,. Jr., neurosurgeon of New Orleans. This man, who had the benefit of x-ray examinations made by R. J. N. Ane, stated very definitely that neurological findings were entirely negative.
The plaintiff: was also examined by Dr. Howard Karr at his. own. instance on April 14, 1952. This gentleman, who had the ben-fit of X-rays made by Drs., Bowie and Teitle-baum, excluded the possibility of “bone, joint-and muscle injury .or disability”, at the time of his examination.
At his own request, the plaintiff was examined on September 2, 1952, by Dr. I. S. McReynolds, orthopedic surgeon of Houston, Texas. The doctor rendered an exhaustive report which was stipulated in evidence and his conclusion was that “I do not feel that he has any organic difficulty referable to his back which would prevent his working at his regular occupation”.
The plaintiff consulted also Dr. Homer D. Kirgis, neuro-surgeon of New Orleans, who examined him on February 5, 1952. This doctor’s findings, which are contained in the record by stipulation, found no muscle spasm or organic evidence of disability. *741 His conclusion was that “I can demonstrate no organic evidence of pathology to the central or peripheral nervous systems. The evidence present at this time of such damage is completely subjective.”
Dr. Edmond C. Campbell, orthopedic surgeon of Lake Charles, examined Batiste on June 25, 1952, at his request, and his opinion was that “I find no evidence on examination of this patient of intervertebral disc injury at this time. I believe that his symptoms are out of proportion to the physical findings”.
A general practitioner, Dr. Joseph W. Crookshank, examined the plaintiff on December 3, 1951, at his request at which time he found a moderate degree of muscle spasm involving a superficial back muscle. At a later ■ examination, this gentleman, however, found ■ what he termed severe muscle spasm and again, -on March 7, 1952, ■found what he termed mild muscle spasm.
The. physician whose testimony is most favorable to the plaintiff appears to be Dr. Steve Price, a general practitioner of Lake Charles who, first examined the plaintiff, at his own request, on March 13, 1952. He testified that he diagnosed Batiste’s condition as “a lumbo-sacral' strain with' possible herriorrage to the muscles with calcification”. This doctor also testified that he treated the plaintiff regularly from the date of his first examination up to and 'including the time of the trial. He noted that during this entire period of time, he found the •plaintiff disabled from a severe strain and muscle calcification. His conclusion1 was that any attempt on his part to set a specific date of termination of disability would be pure speculation.
The above sets out in substance the medical conclusions contained in the record and we feel that it overwhelmingly preponderates in favor of the defendant, with the exception of Dr. Price, and possibly that' of Dr. Crookshank. It appears clear that the plaintiff is certainly not disabled. We can find no error in the ruling of the lower court as to the plaintiff’s disability nór can we find where the court erred in concluding that the disability was at an end when the plaintiff was discharged by Dr. Howell on February 25, 1952. ■ ■
Finding no manifest error in the judgment appealed from, the judgment is hereby affirmed.
Judgment affirmed.
CAVANAUGH, J., recused.